**STATE of Texas ex rel. John B. HOLMES, Jr., Relator**

v.

**Johnny KLEVENHAGEN and the Honorable Joe Kegans, Respondents.**

No. 71242.

Court of Criminal Appeals of Texas, En Banc.

Oct. 30, 1991.

Rehearing Dismissed Dec. 4, 1991.

John B. Holmes, Jr. and William J. Delmore, III, Asst. Dist. Atty., Houston, for relator.

Ray Speece, Houston, for respondents.

John B. Tarleton, Houston, for real party in interest.

Robert Huttash, State's Atty., Austin, for the respondent.

## OPINION

MILLER, Judge.

This is an application for a writ of mandamus and a writ of prohibition. This action is brought by the district attorney of Harris County pursuant to the provisions of the extradition clause of the United States Constitution (Art. IV, § 2, cl. 2), the federal statute requiring interstate extradition of fugitives on demand (18 U.S.C. § 3182), and the Uniform Criminal Extradition Act (codified as Art. 51.13, V.A.C.C.P.). Relator, the district attorney, makes two requests of this Court: (1) to issue a writ of mandamus to Johnny Klevenhagen, the Sheriff of Harris County, directing him to complete execution of a Governor's Warrant for the extradition of Robert Williams, Jr., the real party in interest in this case; and (2) to issue a writ of mandamus to the Honorable Joe Kegans, Judge of the 230th District Court of Harris County, directing her to rescind her prior order granting habeas corpus relief to Williams from the aforementioned Governor's Warrant of extradition.[1] A recitation of the facts precipitating this action is required.

In the Parish of West Baton Rouge in Louisiana, Bobby Ray Williams (aka Robert Williams) was convicted upon a guilty plea of theft and sentenced to five years con-

---

1. In the alternative, Relator requests this Court to issue a writ of prohibition to the 230th District Court directing it not to interfere with the Sheriff's execution of the Governor's Warrant or to attempt to enforce the judgment granting habeas corpus relief from the warrant. Because of our resolution of the mandamus action, we do not address the issues presented by the prohibition action.

finement in the Louisiana Department of Corrections, which sentence was suspended and he was placed on probation. On April 18, 1979, Williams' probation was revoked, and his original sentence of five years imprisonment was imposed. On April 25, 1979, Williams escaped[2] from the West Baton Rouge Parish Jail, and he never returned to that parish in Louisiana to finish serving his five year term.

On April 27, 1980, Williams was arrested in Harris County on another offense, was subsequently convicted of felony theft, V.T.C.A. Penal Code § 31.03, and sentenced to twenty years imprisonment in the Texas Department of Corrections.[3] Williams was released on parole from TDC on April 16, 1986.[4] Almost five years later, on December 18, 1990, Williams was arrested in Harris County on a fugitive warrant that had issued from the State of Louisiana in February of 1980. He was served with the Texas Governor's Warrant on March 6, 1991, commanding his extradition to Louisiana. Williams subsequently filed a writ of habeas corpus alleging *inter alia* that his extradition would be unconstitutional.

On March 13, 1991, Judge Kegans held a hearing on Williams' writ of habeas corpus and received evidence from Williams, the State's attorney, and a fingerprint identification expert. Judge Kegans granted the writ on April 25, 1991, because "it's the right thing to do" even though she "did not find that [Williams was *not* subject to extradition]." The judge did, however, make the express finding that Williams was the man for which the Governor's Warrant issued.

As previously noted, the State now seeks relief by writ of mandamus to compel Judge Kegans to rescind her order granting Williams habeas corpus relief and to direct the Harris County Sheriff to execute the Governor's Warrant. Pursuant to Art. V, § 5, of the Texas Constitution, this Court has jurisdiction to issue writs of mandamus. It is well-settled by this Court that in order for mandamus to issue, the party seeking mandamus must show that there is no other adequate remedy available and that the act sought to be compelled is a ministerial act. *Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex.Cr.App. 1991), citing *State ex rel. Holmes v. Salinas*, 784 S.W.2d 421 (Tex.Cr.App.1990), and *Stearnes v. Clinton*, 780 S.W.2d 216 (Tex. Cr.App.1989).

As to the first prong, relator contends he has no other adequate remedy at law because the State has no right to appeal a judgment granting habeas corpus relief unless that judgment may be construed as an order granting a new trial. See Art. 44.01, V.A.C.C.P. Ordinarily, a respondent in a habeas corpus case cannot appeal from a judgment discharging the applicant. *State v. Gonzales*, 459 S.W.2d 947 (Tex.Civ.App.—San Antonio, 1970, no writ). In general, only the unsuccessful applicant is entitled to the right of an appeal. *Id.*, n. 2. Cf. *State v. Kanapa*, 778 S.W.2d 592, 593 (Tex.App.—Houston [1st Dist.] 1989, no pet.) (recognizing interplay of Art. 44.01 and holding respondent in habeas corpus proceeding may appeal from adverse ruling when State would otherwise have right of appeal in criminal case). Respondent Kegans contends the State may appeal her habeas corpus ruling pursuant to Art. 44.01(a)(3) because, she argues, her order granting habeas corpus relief is "functionally indistinguishable" from an

2. At an evidentiary hearing held in this cause on Williams' writ of habeas corpus which he filed in response to being served with the governor's warrant, Williams testified he had not escaped from custody but rather he "was never transferred to the [Louisiana] Department of Corrections to serve out [his] sentence." Williams further testified that although he was never released from the sheriff's office, he "was taken to a dental office" and "allowed to leave." Williams elaborated that he "walked away from a dentist office."

3. Now called the Texas Department of Criminal Justice, Institutional Division.

4. Apparently at the time of his release from TDC, Williams was told by TDC officials that there was a warrant for him in Louisiana but he was released from custody anyway. At the writ hearing, the State's attorney represented to Judge Kegans that Louisiana issued a detainer for Williams prior to his incarceration in TDC, but that it was "lost or misplaced or overlooked by the Texas Department of Corrections."

order granting a new trial since it returns Williams and the State of Louisiana to the posture in which they stood before the extradition proceedings began.[5] Kegans relies on *State v. Garza*, 774 S.W.2d 724 (Tex.App.—Corpus Christi 1989, pet. ref'd.).

In *State v. Garza*, the trial judge granted the defendant's post-verdict motion for mistrial because one of the jurors the defendant had struck from the jury panel had erroneously served on the jury. The State sought appellate review of this ruling. The court of appeals noted that pursuant to Art. 44.01(a)(2) & (3) the State could appeal an order which arrests or modifies a judgment or grants a new trial, but that the statute provided no authority for the State to appeal an order which grants a motion for mistrial. However, the court of appeals found "that a post-verdict mistrial ruling which returns the case to the posture in which it had been before trial is functionally indistinguishable from an order granting a new trial." *Id.* at 726. Upon this reasoning, the court of appeals thus found the trial court's order was, in substance, one granting a new trial. *Id.*

▆▆▆ The present cause and *State v. Garza* are clearly distinguishable not only in fact but also in law. We find it is irrelevant in this cause whether the order granting habeas corpus relief returns Williams and the State of Louisiana to their previous posture. The mere fact that an order has that effect does not give the State the authority to appeal that order. There is no provision in Art. 44.01 which authorizes an appeal under that specific

circumstance.[6] Likewise, and more importantly, there is no provision in Art. 44.01 expressly authorizing the State to appeal an adverse ruling on a writ of habeas corpus or in an extradition proceeding. We agree with relator that he has no other adequate remedy at law other than this mandamus action. Relator has established the first prong for mandamus to issue.

The question now remains whether the act sought to be compelled is a ministerial act. In *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978), the Supreme Court discussed the purpose of the extradition clause found in the federal constitution and the corresponding duties of the demanding and asylum states. "The extradition clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed." *Michigan v. Doran*, 439 U.S. at 287, 99 S.Ct. at 534. "Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2, of the Constitution." 99 S.Ct. at 535. The Supreme Court also stated that the courts of an asylum state are bound by the extradition clause and by the Uniform Criminal Extradition Act where adopted.[7] A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. *Id.*

The Supreme Court has limited the function of an asylum state in extradition proceedings. An asylum state court may do no more than ascertain whether the requisites of the Extradition Act have been met.

---

**5.** Relying on *Ex parte Oliver*, 430 S.W.2d 511 (Tex.Cr.App.1968), Respondent Kegans contends the State of Louisiana could then request the issuance of a second Governor's Warrant for extradition even though the first was objectionable. Respondent's reliance on this case is misplaced. In *Oliver*, the applicant appealed from an order entered in a habeas corpus proceeding remanding him to custody for extradition to the State of Pennsylvania. The first Governor's Warrant was incomplete and the State was allowed to obtain an amended or corrected warrant, which it did. This Court found the warrant sufficient.

In the present cause, it appears the issuance of a second Governor's Warrant for Williams

would be futile as Judge Kegans did not find any deficiency in the first warrant but rather granted Williams' writ of habeas corpus on equitable grounds. Seemingly nothing would prevent that from happening again if a second, legally sufficient Governor's Warrant were issued.

**6.** See *State v. Moreno*, 807 S.W.2d 327 (Tex.Cr. App.1991) and *State v. Young*, 810 S.W.2d 221 (Tex.Cr.App.1991).

**7.** Both Texas and Louisiana have adopted this act. See Art. 51.13, V.A.C.C.P. in Texas, and LSA C.Cr.P. arts. 261 to 280, in Louisiana.

*California v. Superior Court of California,* 482 U.S. 400, 107 S.Ct. 2433, 2438, 96 L.Ed.2d 332 (1987). As the Court held in *Michigan v. Doran,* 439 U.S. at 289, 99 S.Ct. at 535, the Extradition Act leaves only four issues open for consideration before the fugitive is delivered up, to-wit:

(a) whether the extradition documents on their face are in order;

(b) whether the petitioner has been charged with a crime in the demanding state;

(c) whether the petitioner is the person named in the request for extradition; and

(d) whether the petitioner is a fugitive.

Neither defenses nor the guilt or innocence of the charged party is to be considered during extradition proceedings. *California v. Superior Court,* 107 S.Ct. at 2438. The Supreme Court made this point inexplicably clear when it held in *Michigan v. Doran,* 99 S.Ct. at 536, that "once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cuase existed, no further judicial inquiry may be had on that issue in the asylum state."

This review of the law clearly indicates Judge Kegans was without authority to consider equitable issues during the writ hearing. As noted, only the four issues outlined in *Michigan v. Doran,* 99 S.Ct. at 535, were for proper consideration. After reviewing the writ record before us, we conclude the requisites of the Extradition Act have been met. The Governor's Warrant and supporting papers (and true and correct copies thereof) were introduced into evidence by the State during the writ hearing. Facially, the documents are in order. The Governor's Warrant, signed by the Honorable Ann W. Richards on March 4, 1991, is based on representations made by the Governor of Louisiana that Bobby Ray Williams was convicted of theft in Louisi-

ana and thereafter escaped from that state. The warrant is supported by the requisition application, affidavit and warrant from the Secretary of the Louisiana Department of Corrections indicating Williams is a fugitive from justice, the Bill of Information charging Williams with theft, court minutes of the guilty plea and sentence, the order of revocation of probation, and identification documents (fingerprints and photograph). The only allowable challenge to the sufficiency of the Governor's Warrant advanced by Williams during the writ hearing was to the identification of the person named in the warrant.[8] The court, however, after considering the fingerprint and photograph evidence, made the express finding that Robert Williams, the petitioner in the hearing, was the person named in the request for extradition. The court has in fact completed *all* of the discretionary actions involved in the case, leaving only those actions that can be classified as ministerial.

The Governor having granted extradition and the State having complied with the Extradition Act, the denial of habeas corpus relief to Williams was constitutionally mandated by the extradition clause of the constitution. Judge Kegans was without discretion to grant relief. *California v. Superior Court,* 107 S.Ct. 2433. Thus, the second prong for mandamus to issue has been satisfied.

Having concluded the State has met the requisites of the Extradition Act, we hold that, under the circumstances, the judge had no discretion to grant Williams habeas corpus relief. We assume respondent will immediately rescind her order granting this relief.[9]

---

8. The warrant was issued for "Bobby Ray Williams" who was known as "Robert Williams" in Harris County.

9. As a courtesy to the judge against whom the writ of mandamus would issue, it is customary for this Court to withhold the actual issuance of the writ in cases where same is imminent, in order to allow the judge to voluntarily comply

with the Court's opinion. The writ of manda- mus will issue only if she refuses to do so.